UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT     **FILED UNDER SEAL**

CRIMINAL NO.:

COUNTY OF NEW HAVEN     November 27, 2018

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Eric Myshrall, having been duly sworn, do hereby state:

### AFFIANT'S TRAINING AND EXPERIANCE

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code.

2. I have been employed as a Police Officer with the Willimantic (CT) Police Department since 2010. From October 2015 to the present, I have been assigned to the Drug Enforcement Administration (DEA) Hartford Resident Office (HRO) as a Task Force Officer (TFO). As a DEA Task Officer, I have participated in numerous investigations concerning violations of federal narcotics and firearms laws. I have coordinated controlled purchases of illegal drugs utilizing confidential sources and cooperating witnesses. I have obtained/participated in the execution of search and arrest warrants pertaining to individuals involved in the distribution of controlled substances, conducted electronic surveillance and physical surveillance of individuals involved in the distribution of controlled substances, analyzed records documenting the purchase and sale of illegal drugs, spoken with informants and subjects, as well as other local, state and Federal law enforcement officers, regarding the manner in which narcotics traffickers obtain, finance, store manufacture, transport, and distribute illegal drugs. I have received instruction

1

relative to conducting drug investigations while attending training at the Connecticut Police Academy (POSTC) in Meriden, CT. I have also successfully completed the DEA Basic Narcotics School. In addition, I also receive periodic in-service training relative to conducting drug investigations. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3. I have written and executed search warrants, which have resulted in the seizure of illegal drugs and evidence of drug violations. I have participated in numerous investigations involving individuals suspected of distributing illegal drugs in both state and federal drug investigation, coordinated controlled purchases of illegal drugs utilizing confidential sources and undercover police officers, written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs, and spoken with informants and subjects, as well as other local, state, and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have prepared numerous affidavits in support of applications for search and arrest warrants which have resulted in orders being issued by judges, and have led to the conviction of numerous defendants for violations of narcotics laws.

4. Based on my training, experience, I know that drug traffickers often have photographs, slides, or video movies of themselves, their co-conspirators, contraband, and assets purchased with drug proceeds. These photographs and video movies are normally in the drug trafficker's possession or residence or are frequently stored electronically on wireless telephones, i-Pads, computers, and other electronic devices. I also know that drug traffickers often use multiple phones to facilitate their illegal activities. Drug traffickers will utilize multiple phones in an

2

effort to conceal their identities as well as to separate customers and source of supply. Drug traffickers will frequently change cellular devices and cellular numbers to avoid detection by law enforcement. Drug traffickers utilize their phones and various phone related features and applications, such as messenger and text messaging, to contact each other and arrange drug transactions. Drug traffickers often subscribe these phones in fictitious names and at fictitious addresses in an effort to conceal their identities and connection to the phones. Drug traffickers frequently store the contact information for criminal associates in their phones, often under an alias. Drug traffickers will also access internet-based applications such as Facebook, in furtherance of their trafficking activities. Drug traffickers will also utilize their phones' GPS or location services to arrange meetings and to find meet locations for the purpose of conduct narcotic transactions.

### Request

5. I submit this affidavit in support of a warrant to search six (6) cellular devices (collectively referred to as the "**Target Devices**") identified in **Attachment A** of the search warrant, for the items identified in **Attachment B** of the search warrant:

   a. one (1) Blackberry cellular telephone with corresponding telephone number 860-884-1735 recovered from Carlos DELGADO on or about July 9, 2018, and currently in DEA's possession (hereafter referred to as "**Target Device-1**");

   b. one (1) Blackberry cellular telephone with corresponding telephone number 860-208-7889 recovered from DELGADO's residence on or about July 9,

3

        2018, and currently in DEA's possession (hereafter referred to as "**Target Device-2**");

c.     one (1) alcatel cellular telephone bearing telephone number (860) 207-3127 recovered from DELGADO's residence on or about July 9, 2018, and currently in DEA's possession (hereafter referred to as "**Target Device-3**");

d.     one (1) ZTE flip phone with a serial number believed to end in 8537 (hereafter referred to as "**Target Device-4**") recovered from DELGADO's residence on or about July 9, 2018, and currently in DEA's possession;

e.     one (1) ZTE flip phone with a serial number believed to be end in 9884 (hereafter referred to as "**Target Device-5**") recovered from DELGADO's residence on or about July 9, 2018, and currently in DEA's possession; and

f.     one (1) ZTE flip phone with a serial number believed to end in 3222 (hereafter referred to as "**Target Device-6**") recovered from DELGADO's residence on or about July 9, 2018, and currently in DEA's possession.

### Probable Cause

6. I am investigating Carlos DELGADO a.k.a. "Los," the leader of a drug trafficking organization (DTO) operating in Windham County Connecticut, and his coconspirators. I am participating in this investigation in conjunction with other agents, detectives and officers from the DEA HRO. I have participated in this investigation and, because of my participation, as well as information provided to me by other law enforcement officers, I am thoroughly familiar with the information contained herein.

7. During the course of this investigation, a confidential source (CS) reported that DELGADO and the members of the DTO where utilizing several cellular telephones to track

4

narcotics shipments from Puerto Rico and elsewhere and to distribute their narcotics. In connection to the investigation, law enforcement obtained authorization to ascertain the physical location (hereafter referred to as the "Requested Location Information") for DELGADO's primary cellular telephone 860-884-1735, which was subsequently identified as **Target Device - 1**.[1]

8. On May 21, 2018, information was received by law enforcement that indicated that a USPS parcel from Puerto Rico was to be delivered to one of DELGADO known locations. Surveillance units established a perimeter around DELGADO's residence as well as the delivery address and, with the assistance of Requested Location Information from **Target Device-1**, law enforcement was able to track DELGADO's travel to and from the delivery location.

9. On July 9, 2018, the Honorable U.S. Magistrate Judge Robert M. Spector signed a criminal complaint and arrest warrant for DELGADO, as well as search and seizure warrants for DELGADO's residence and three vehicles utilized by DELGADO.

10. On July 9, 2018, law enforcement arrested DELGADO, who was in possession of **Target Device-1**. Also on July 9, 2018, law enforcement stopped TORRES-FERNANDEZ for a motor vehicle infraction and subsequently arrested him for possession cocaine.

11. After the arrests of DELGADO and TORRES-FERNANDEZ, law enforcement executed the search warrants for DELGADO's residence and motor vehicles. Law enforcement uncovered approximately $49,000.00 that was located in the truck of one of DELGADO's vehicles. During the search of DELGADO' residence, law enforcement located a laptop

---

[1] On April 5, 2018, the Honorable U.S. Magistrate Judge Robert A. Richardson authorized the collection of the Requested Location Information; on or about May 1, 2018, the Honorable U.S. Magistrate Judge Donna F. Martinez authorized the continued collection of the Requested Location Information; and on May 31, 2018, the Honorable U.S. Magistrate Judge Robert M. Spector authorized the continued collection of the Requested Location Information.

5

computer. Law enforcement seized **Target Device-2** from the kitchen in DELGADO's residence. Law enforcement recovered four handguns, one AR 15 style rifle, multiple rounds of ammunition in different calibers, approximately one kilogram of heroin, **Target Devices 3, 4, 5, and 6**, and DELGADO's passport from the bedroom of DELGADO's residence.

12. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████ ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

15. █████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

17. On or about August 7, 2018, a federal grand jury returned a five count indictment charging DELGADO and TORRES-FERNANDEZ with conspiracy to possess with the intent to distribute and distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 846; possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§922(g)(1), 924(a)(2); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A); and money laundering, in violation of 18 U.S.C. § 1957 (hereafter collectively referred to as the "Target Offenses").

18. ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ law enforcement identified telephone number 787-930-4436 as a pertinent telephone number in contact with DELGADO. For instance, in **Target Device-1,** there is a text message conversation during which a photo of suspected marijuana was sent between DELGADO and telephone number 787-930-4436. A subsequent check of this number in DEA databases revealed that telephone number 787-930-4436 was part of a DEA Tampa, Florida, investigation in May 2018 in which DEA seized approximately 2 kilograms of cocaine from a USPS parcel shipped from Puerto Rico to an address in Tampa, Florida. The Tampa

investigation revealed that telephone number 787-930-4436 was being utilized by the source of kilograms who was subsequently identified only as Frenan Rivera. Based on the similarities in the names Fernando (VENGAS-RIVERA) and Fernan Rivera, and the fact that DELGADO was in contact with telephone number 787-930-4436, law enforcement in Connecticut sent the DEA Tampa office a photo of VENEGAS-RIVERA. Based on the information received from DEA Tampa, it is believed that their target, Fernan Rivera, is Fernando VENEGAS-RIVERA. In addition, DEA Tampa identified an additional telephone number, 787-631-4094, which was being utilized by Fernan Rivera (VENEGAS-RIVERA). This alternate telephone associated with Fernan RIVERA was also located during the cursory search of **Target Device-3**.

19. Indeed, during the ███████ reviews of the **Target Devices**, law enforcement identified several Puerto Rican and Mexican telephone numbers in each of DELGADO's cellular telephones. More specifically, in **Target Devices 1, 2, 4 and 5** there is a listed contact for an individual identified as "Fin." Based on exchanges with Fin, it is believed that Fin is a source of supply for DELGADO. For instance, in the **Target Devices**, law enforcement identified text messages between DELGADO and Fin that contains pictures of a postal package. Additionally, in photos which are believed to be taken of **Target Device 1,** there is a photo of a text string between DELGADO and Fin where in which a photo appears to be sent to DELGADO from Fin depicting a plate with what appears to be at least five (5) different types/qualities of heroin laid out in shades from gray to light brown and corresponding text messages in the Spanish language which seem to indicate which of the colors of the heroin is preferred. For example, in one part of the text string there are texts messages which read "jajajaj la gris me gusto mas" followed by other text messages which read "Pero al brown escura esta bien buena tambien!!" Based on my training, experience and knowledge of this investigation, I believe that the DELGADO and Fin

8

were discussing which of the various types (colors) of heroin they prefer, based on the photo and the use of the terms "gris," which is Spanish for gray, and "brown."

20. **Target Devices 1** and **4** both contain the same telephone number for Fin, 939-218-8014. Additionally, **Target Device -1** has a listed contact for Luis ALAMO, 860-861-6339. A number for Fin was also located in **Target Devices 2 and 5**. However, in **Target Devices 2**, the contact number for Fin, 787-365-0492, is different from the numbers found in **Target Devices 1, 4, and 5**. In **Target Device 5**, the contact number for Fin, 787-370-2439, is different from the numbers found in **Target Devices 1, 2, and 4**. Based on my training and experience, I believe these different numbers are attributable to the fact that narcotics traffickers commonly hold more than one cellular telephone at a time and are constantly changing up their cellular devices to avoid detection by law enforcement. Additionally, ALAMO's telephone number, 860-861-6339, was found in the recent call logs for **Target Device-5**, but the number is not listed in the contact section of the telephone.

21. In **Target Device 3,** law enforcement identified several text messages between DELGADO and Puerto Rican Telephone exchanges (939 and 787) regarding parcels, the preferred method of transportation for this organization. Additionally, as mentioned above, the secondary telephone number identified by the DEA Tampa office during their investigation in to Fernan RIVERA, who is believed to be VENEGAS-RIVERA, 787-631-4094, was found within **Target Device-3.**

22. During the cursory search of **Target Device 6**, law enforcement identified several telephone contacts listed in the telephones recent call list to include telephone numbers with Arizona and Puerto Rican exchanges (520 - Arizona and 787 - Puerto Rico). Additionally, Luis

9

ALAMO's cellular telephone number, 860-861-6339, was found in **Target Device 6**'s recent call list.

23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████.

24. The cursory searches of the **Target Devices** were conducted initially to ████████ ████████████████████████████████████ to gather information on local members of DELGADO's DTO, and thus, not every aspect of every number, contact or text message was reviewed and the data from the phones were not extracted, leaving vast amounts of information still to be identified. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████, the undersigned Affiant seeks the requested authorization.

**INFORMATION REGARDING CELLULAR TELEPHONES AND THE REQUESTED SEARCH WARRANTS FOR THE TARGET DEVICES**

25. Based on my training and experience, as well as information asserted herein, there is probable cause to believe, and I do believe, that within the **Target Devices** there will be found items which constitute evidence of the crimes of the Target Offenses.

26. Based on my training, experience, I also know that the aforementioned **Target Devices** may have some or all of the capabilities that allow each phone to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system (GPS) navigation device, a hand-held radio, and a personal digital assistant (PDA). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular device, as well as evidence relating to co-conspirators with whom the device was in contact.

27. With regards to the **Target Devices** I request permission to seize and search the **Target Devices** for evidence relating to the Target Offenses as described in **Attachment B**.

11

28. Based on my training and experience, and as set forth in this affidavit, I know wireless telephones are used by co-conspirators to communicate efforts to conduct criminal activities and it is likely that the **Target Devices** were used by the defendants to communicate with co-conspirators in the unlawful distribution of narcotics and/or firearms. Furthermore, based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of text communications between co-conspirators who distribute narcotics and/or firearms, or conspire to do so. Also based on my training and experience, I know that internet-browsing history in wireless phones can contain evidence of internet searches for locations and addresses used for storing and distributing narcotics and/or firearms. Also based on my training and experience, wireless phones may contain videos and images of co-conspirators, possible locations to ship, receive, or store narcotics and/or firearms, the quantity of narcotics and/or firearms, as well as shipping packages within which the narcotics are concealed. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones, including phones used by those involved in the distribution of narcotics and/or firearms:

    a. the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;

    b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

    c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

    e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

    f. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

12

        g.      saved searches, locations, and route history in the memory of said devices;
        h.      internet browsing history, to include, internet searches in the memory of said device; and
        i.      images and videos in the memory of said device.

29. It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

30. It is also requested that each warrant be deemed executed once the items listed in **Attachment B** have been extracted from the phone and that further analysis of the seized items be permitted at any time thereafter.

31. It is also requested that stored electronic information, data, information and images contained in the **Target Devices** may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS OF THE TARGET DEVICES

32. The warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

13

33. As described above and in **Attachment B** of the Search Warrants, the undersigned Affiant seeks permission to search and seize evidence that the **Target Devices** might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. Searching for the evidence described in **Attachment B** of the Search Warrants may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrants. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in **Attachment B**, or perusing all stored information briefly to determine whether it falls within the scope of the warrants. In light of these difficulties, DEA, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in **Attachment B**.

## CONCLUSION

35. I submit that this affidavit supports probable cause for warrants to search the **Target**

14

**Devices** for the items described in **Attachment B** of the Search Warrant for evidence, fruits, and instrumentalities of the Target Offenses.

36. Additionally, as this affidavit details information pertaining to interviews from multiple defendants and an ongoing investigation into the conduct of another co-conspirator, I request that this affidavit and related documents be kept under seal under further order of the Court.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Eric Myshrall, DEA TFO

Subscribed and sworn to before me this 27th day of
November 2018.

　/s/
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

15